22 C. C. P. A. (Patents)

## In re JENNINGS.

### Patent Appeal No. 3456.

Court of Customs and Patent Appeals.
April 15, 1935.

O. H. Eschholz, of East Pittsburgh, Pa. (F. W. Lyle and Ralph H. Swingle, both of East Pittsburgh, Pa., and Raymond Jones, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

After allowing several claims in appellant's application for a patent on electrical switch mechanism, the Primary Examiner of the United States Patent Office reject-ed claims 1 to 9, inclusive. Upon appeal to the Board of Appeals, the Examiner's decision as to claims 6, 7, and 8 was reversed, and as to the remainder of the claims his decision was affirmed. Appeal has been taken here from the decision of the Board of Appeals as to claims 1, 2, 3, 4, 5, and 9, and in this court appellant has moved to dismiss the appeal as to claim 9. Claims 1, 2, 3, 4, and 5 follow:

"1. In a circuit interrupter, means to establish an arc, arc extinguishing means for said arc comprising a plurality of metal plates having open spaces therebetween, one or more of said plates having openings extending therein from one edge thereof and being of iron for moving said arc in said plates and retaining it therein until extinguished.

"2. In a circuit interrupter, a moving contact for establishing an arc, arc extinguishing means for said arc comprising a plurality of metal plates having open spaces therebetween, one or more of said plates having elongated openings extending therein from one edge thereof and said openings being of a width only slightly greater than said contact and said plates being of a ferrous material for retaining said arc therein until extinguished.

"3. In combination, means to establish an arc, and arc extinguishing means for said arc comprising a plurality of plates of a ferrous material having ventilating passages therethrough for moving said arc in said arc extinguishing means and opposing motion of said arc out of said arc extinguishing means, said ventilating passages being open at one or more edges of said plates to permit the escape of gas from between said plates.

"4. In combination, means to establish an arc, and arc extinguishing means for said arc comprising one or more plates of iron, having narrow, deep slots extending therein from one edge thereof and open spaces therebetween, for moving said arc in said arc extinguishing means and opposing motion of said arc out of said arc extinguishing means.

"5. In combination, means to establish an arc, and arc extinguishing means for said arc consisting of a plurality of slotted plates of a ferrous material, having spaces therebetween which are open to permit flow of arc gases out from between said plates in a direction transverse to the arc, for moving said arc in said arc extinguishing means and opposing motion of said arc

out of said arc extinguishing means, said slots in all of said plates being aligned."

In order that the precise invention here claimed may be fully understood, it is regarded as essential to set out in considerable detail the history of the application at bar and related applications by appellant, as well as a rather detailed description and explanation of the construction and characteristics of appellant's switch.

The feature of the switch mechanism involved here is in the art relating to arc extinguishing devices, which device is applied to the contacts of a circuit interrupter, such as knife switch or other circuit breaker. When the circuit is interrupted, an arc is drawn between the fixed and moving contacts. The arc is frequently of such high temperature that the contacts will be melted or burned if not controlled quickly. Appellant has provided an extinguisher which quickly quenches the arc. While the device may be applied to different kinds of circuit interrupters, its performance is best understood when applied to an ordinary knife switch. In order to break the circuit in such a switch which has one and pivoted, the knife blade is moved to open position and at the instant of opening the arc begins. Appellant's device comprises a stack of metal plates having magnetic qualities, such as iron or other ferrous material, surrounded by nonconductive material. Between each plate is left an open space for ventilation, and the plates are held apart by insulating strips which are substantially of the same thickness as the plates. Each plate is provided with a groove or slot, which slots are so disposed as to be in alignment. In the case of a knife blade switch, when the knife blade is moved out of contact position, the blade passes into the slotted aperture in the stack of plates, and the arc is divided up by coming into close contact with the magnetic metal plates, and the heat is dissipated and any gases which accumulate pass out through the ventilating holes. One of appellant's constructions involves disposing the plates at an angle to one another and in another the plates are placed in staggered relation.

The references relied upon are Dempster, 854723, May 28, 1907; German patent 266745, November 29, 1913; German patent 272742, April 8, 1914; British patent 208521, July 24, 1924.

The Examiner, in an elaborate statement of his grounds of rejection, held, first, that the claims were fully met by the applicant's British patent No. 208521, the application for which corresponded to applicant's original United States application, serial No. 606,565, filed December 13, 1922.

The Board of Appeals reversed the Examiner on this holding and held that the British patent should not be regarded as prior art in view of the fact that the present application was a proper continuation of applicant's 1922 United States application No. 606,565, which, as we have before stated, corresponded to and was for the same invention as the British application.

The claims of appellant's application serial No. 606,565, filed December 13, 1922, were rejected by the Primary Examiner and appeal was taken to the Board of Appeals, and the Examiner's rejection was affirmed, the claims being rejected on the German patent 266,745. In appellant's said original United States application No. 606,565, the claims did not call for the use of plates of iron or ferrous material as do the claims at bar.

The second ground of rejection of the Examiner was that the claims were "unpatentable over German patent 266,745 in view of Dempster, especially in further view of German patent 272,742." As to all the claims, the Examiner was of the opinion that it was not inventive to make the plates of the German patent 266,745 of iron or steel, it being provided in the said German patent that the plates were to be made of metal, no particular metal being named.

The Dempster patent No. 854,723 relates to an arc quenching device for a fuse and shows a stack of round plates having a central aperture for the fuse. Dempster taught that the multiplicity of iron plates near the point of contact would subdivide and cool the arc when the electrical current was broken. Dempster stressed the heat conducting and magnetic properties of iron plates when used in this art.

The first German patent 266,745, also shows a stack of metal plates containing slots comparable to the slots involved in the instant application through which slots passes the blade of the switch. No particular metal was named, but it is stated by the patentee that the plates possess good heat conductivity.

The second German patent, 272,742, according to the patentee, was a further development of his first patent, 266,745. He there disclosed a stack of metal or metal-

surfaced round plates comparable to those shown by Dempster. It is stated by the Examiner that this patent was cited for the purpose of showing "that the circular type plate with an aperture through the center is closely related to the slotted type of patent 266,745."

After holding that the Examiner was in error in his conclusion that the present application was not a proper continuation of his original application, the Board, in reversing the Examiner and allowing claims 6, 7, and 8, had the following to say:

"We agree with the Examiner's conclusions to the extent that if the structural arrangement of the apparatus did not necessarily and unavoidably produce the result, that it would not be permissible to add reference to it but we are unable to agree with the Examiner's view that the device shown where the plates are of iron does not necessarily produce such action. The line of formation of any arc lies between the ends 24 of the jaw members 13 and the end of the receding blade 14. This is well within the confines of the slots in the plates and the slots in the plates are shown as being relatively narrow and the walls approaching closely to the sides of the blade 14. This structure amply supports the showing of the theoretical action of this device as magnetically causing the arc to be urged towards the bottom of the slots. We believe claims fairly defining this structure together with the limitation that the plates are formed of magnetic material should be warranted in this application and not regarded as involving new matter.

"None of the references on which the claims are also rejected discloses this principle nor structurally anticipate the details disclosed.

"Of the appealed claims we regard claims 6, 7 and 8 as including sufficient structure to inherently accomplish this result and to clearly read upon the original showing."

In affirming the Examiner in his rejection of claims 1, 2, 3, 4, 5, and 9, the Board stated that the claims were in broader terms than claims 6, 7, and 8, and were not allowable for the reasons set forth in the Board's opinion of August 6, 1931, in rejecting the claims in said application 606,565. The claims of the application in the parent case, 606,565, were rejected on German patent 266,745.

Concerning claims 1, 2, 3, 4, 5, and 9 of the instant application, the Board said:

"* * * While it is noted that these claims 1, 2, 3, 4, 5, and 9 are limited to plates of iron or ferrous material we think this does not serve to distinguish them from the German patent No. 266,745, where the structural features are only broadly set forth and do not necessarily operate differently from that device.

"While claim 4 is limited in respect to the relatively narrow deep slots in the plates, it does not include the combination with the knife blade element and jaw member 13 or equivalent means. We think this record does not warrant broadening the application of this principle to arc extinguishing devices of this nature generally. This ground of rejection applies also to claims 1, 2, 3, 5 and 9."

Upon reconsideration, the Board stated, in substance, that it was in error in the last above-quoted part of its decision, and that it was of the opinion that the jaw member feature of certain of the claims was an unnecessary limitation and that "the principle of action of this switch does not depend upon having a jaw 13 of spaced prong members as in the conventional knife blade switch," and it recommended the allowance of claim 9 if presented in proper formal amendment. This fact accounts for the dismissal here of the appeal as to claim 9.

In this court, appellant complains that the Examiner has rejected the claims without finding any reference anticipating his invention and urges that the combination of references relied upon by the Examiner and Board does not anticipate the claims and constitutes no proper ground of rejection, for the reason that the combination has produced new, useful, and unexpected results, and was unobvious. He points out that to make the plates of the German patent 266,745 of iron would defeat the purposes of the blow-out coil disclosed in the German patent, since the magnetic plates would short-circuit the magnetic flux of the blow-out winding, so that the flux set up by the winding would flow in the magnetic plates, leaving practically no flux in the spaces between the plates where it could move the arc; that the advantages of combining the features suggested by the references was not obvious is shown by the fact that the Dempster patent which used iron issued in 1907, the German patent issued in 1912, and that for 20 years after-

wards no one had ever thought of combining these features into a commercial structure until the applicant did it, with unusually good results. It is shown by affidavit that both the Dempster and the German patents are controlled by the same assignee.

It is argued by appellant, and supported by sworn affidavits, that the use of slotted iron plates in this kind of device produces new functions and new results not obtained from any prior art device; that the magnetic quality of the iron when in the form of iron plates having slots extending from the outer edge of the plates towards the center thereof has the effect of distorting the magnetic field and moving the arc further into the plates due to the higher reluctance of the magnetic flux paths in front of the arc than behind the arc.

The record contains convincing proof of the fact that there is co-operation between the shape of the slotted plates and the material thereof, which co-operation produces new and desirable results. The affidavits filed point out the new and beneficial results obtained, show the defects and shortcomings of the old art devices, and one of the affidavits shows that spaced iron plates have been used in arc extinguishers since 1925, in accordance with the teachings of the Jennings application at bar, and that over 350,000 arc extinguishers so constructed had been sold prior to February 24, 1933. One of the affiants, manager of the circuit breaker engineering department of a large electrical manufacturing company, stated that to the best of his knowledge no circuit interrupters embodying arc extinguishing structures of the type disclosed in the two reference German patents have ever gone into commercial use in this country.

It seems to us that it would not be obvious to the skilled mechanic to do what appellant has done. To say the least, it is not clear that inventive genius was not involved. It is shown here that when the arc is moved by the magnetic material into the spaces between the iron or other ferrous metal plates, it is successfully held there and extinguished without employing magnetic blow-out coils or air blasts as a means of amplifying the buoyancy of the arc. Appellant has eliminated certain features of the prior art and retained the benefits thereof by using ferrous material with the grooved stack of plates constructed in the manner described. We think it is sufficiently shown here that if the plates are

not of magnetic material there is no attraction between the plates and the arc to move the arc into the spaces between the plates, and we feel sure that notwithstanding the fact that Dempster taught the use of round plates of iron with round holes in the center thereof, he had no conception of nor did his disclosure suggest appellant's invention.

It follows that the reasons assigned by the tribunals below for rejecting the claims at bar cannot be approved. The decision of the Board of Appeals is reversed as to claims 1, 2, 3, 4, and 5, and the appeal is dismissed as to claim 9.

Reversed.